Colcock, 3.
In this case, I am constrained to diflpr from my brethren, and to say that in my opinion a new trial should not he granted. It appears to me that the case rests.entirely on a matter of fact, which was determined by the verdict of the jury. The question was on the sea-worthiness of the vessel, and this is not a definite term, It appears it is to he considered in relation to the voyage and cargo. It is true, (says Marshall,) that there are different degrees of sea-worthiness; one ship may fairly he thought capable of performing a given voyage, and may to a common intent be.deemed sea-worthy, with reference to that voyage, &c. If information is particularly called for, the insured is bound to disclose truly what he knows on the subject. But provided the ship be in a condition to encounter the ordinary perils of the intended voyage, it is unnecessary to communicate, unsought for, a circumstance which, if disclosed, might have the effect of enhancing, the premium. (Vol. 1, page 154.) Now the testimony of the witness who spoke most of the badness of the vessel, goes to support the position that the vessel was competent to the performance of the voyage. Her springing a leak was an inclusive circumstance; and the other injuries may have originated from her *365 striking on the bar. Further, it appears, that she was afterwards sold and put to use, which goes, in some degree to contradict the survey taken in Wilmington. At all events, if the evidence was tradictory or doubtful, it was the province of the jury to decide on it; and they having done so I am not disposed to disturb the verdict. I am, therefore, against the motion.
Smith, J.
The brig John, commanded by captain Joseph Hudson, was insured, together with freight, 82,500, at 7 per cent, on the 25 th April, 1806, by the plaintifFs, on a voyage from Charleston to St. Domingo. She sailed from the port of Charleston on the 30th of April, 1806, and on her voyage, • the weather was pleasant. She shortly after sailing, sprang a leak, and on the third day had 18 inches water in the hold. The leak increased so much, that, notwithstanding two pumps were constantly employed, they were forced to bear away for Wilmington, the nearest port, for safety; where she underwent a survey, was condemned, and sold. The survey stated that on ripping up her ceiling, they found that the most of her futtoek timbers were rotten; some of the beams sprung, and their ends rotten; the timbers on each side rotten, and many broken. That they found the hull much decayed, and generally in such bad condition, that she appeared to have kept together from her sheathing and hanging knees. Several witnesses thought, with great management and good weather, she *366 might have performed her voyage, but none of them say that she was sea-worthy. Mr. Pritchard said s^e was QOt wort^ repairing, and that he told Mr. Hudson, one of the plaintiffs, so, who replied, he must repair her, which was all he had to do. And this witness said he found, as well as left, some of her main timbers rotten.
To grant a new trial must be interfering with the. question of fact tried by the jury, whether this vessel was sea-worthy or not. The court have the power 'to grant a new trial, even upon matter of fact, and set aside the verdict, when they think the jury have not found according to the facts in evidence before them. This power, the court will exercise with much caution. But where the facts in favour of a new trial are so strong as they appear in this case, it seems to me, that a new trial ought not to be refused.
This ship was so rotten, that she would scarcely bear wafting from Charleston to Wilmington in. fine weather; leaking to such a degree that two pumps could not keep way with it. On a survey she was found so rotten as to be totally unfit, five days after ; she sailed, to pursue her voyage, and was only kept together by her sheathing and hanging knees ; and all this pretty well known to one of the insured be: fore he effected the policy.
There is in every insurance, whether on ship or goods, an implied warranty that the ship shall be *367 sea-worthy when the risk commences : that is. that she shall be tight, staunch and strong. Marsh. 363. It is impossible to say that this ship was tight, Staunch and strong, when she was only hanging gether by her sheathing and upper knees, and must have gone to pieces in the first moderate gale. ery ship at the time of insurance must be able to perform the voyage, unless some external accident should happen; and if she have a latent defect, wholly unknown to the parties, that will Vacate the contract, and the insurers are discharged. Park. 288.
According to this rule of law, the evidence is' ¡Wholly on the side of the defendant. No external iccident happened. No high wind or' rough seas meurred, to produce the leaky state in which the 'essel was found immediately after she sailed. On the contrary, it Was in evidence that the weather ms pleasant, and that no accident happened which muid have caused the leak. Then it must result as-ín undeniable inference, that it arose from some latent defect. But this inference is unnecessary, as jit was in proof, that She was very rotten, and un- . ible thereby, to perform her voyage, and this defect known to one of the insured. I am for a new trial.
Brevard, J.
New trials are granted for the jurpose of attaining real justice. Where there is a Reasonable doubt, approaching to certainty, that justice has not been done, and that to suffer the ver- *368 diet to stand, would’be permitting injustice, a new’ trial ought to be granted, a which is no more than hearing the cause more deliberately tried by another jury.” It is in the discretion of the court to grant or refuse it. But this discretion must be judicial, and not arbitrary. It must be guided by the nature and circumstances of the case, and directed with a view to the attainment of justice.
In the present case, it appears very clear to me, that justice has not been done. The verdict appeal’s to me so decidedly against an overbearing weight of evidence, that it may be easily discerned at once, that the jury either were mistaken, or were influ enced by passion, prejudice or partiality. It is true there was evidence on both sides, and that it is the privilege of the jury to determine the credibility and weight of evidence, and decide on facts. But if the strength and weight of evidence is obviously against their verdict, it induces a well founded ap prehension that the jury have fallen into some mistake, or have been misled by their passions or preju dices; which will furnish sufficient cause for award-| ing a new trial. Under these impressions, my opim ion is, that the verdict ought to be set aside and a| new trial granted.
Nott, J. concurred with Brevard and Smith.
Bay, J.
The point submitted by the brief, was] the sea-worthiness of the brig When she sailed. The *369 judge in his report states, tliat the vessel sailed from this port on the first of May, and that on the 3rd day afterwards, she was obliged to bear away for Wilmington, North-Carolina, where she was condemned as unseaworthy. That from the protest of the captain and mariners, it appeared she sprung aleak in contrary currents, and fresh and adverse breezes, on the third day after she left Charleston, which obliged them to bear away for Wilmington. But they were all of opinion she was sea-worthy when she sailed. That a survey was had upon her at Wilmington, and the surveyors were of opinion, that she was unfit for sea ; that some of her timbers were broken, others rotten, and upon the whole, they were of opinion, she was not sea-worthy when she left Charleston. William Pritchard, sen. and several other witnesses in Charleston, proved that a vessel with such defects might in good Weather have performed a voyage to St. Domingo, where she was bound; that many vessels are condemned as not seaworthy, and have afterwards been repaired, and performed their voyagé. William Pritchard, jun.. swore he had repaired her in 1806 or 1807 : that he hove her down, and Sheathed and caulked her: that he put in breast and stern hook, and three timbers in her bow, in the place of some which had been rotten: that he told captain Hudson, who commanded her, that to repair her thoroughly would cost more than she would be worth when repaired : but that he still thought from the work he put on her she was fit for a voyage to Savannah: said, however, if the vessel had been his, he would not *370 have repaired her : his bill amounted to 500 dollars. * It appeared also, that she had brought a heavy load of mahogany from St. Domingo shortly before she had been put into Mr. Pritchard’s hands. The judge further reports, that as- there was evidence for, and against the sea-worthiness, he left it to the jury to find, as they thought the weight of the testimony preponderated, and the jury found for the plaintiff 1000 dollars. From the foregoing report it is very evident, that there was a good deal of evidence on both sides, which, I think the presiding judge very fairly left to the jury under all the circumstances ; and they have found a verdict for the plaintiff. The question for our consideration now is, shall this verdict be set aside, and a new trial granted, or not?
I am well aware that it is extremely difficult, if not impracticable, to lay down any absolute, general rule, about granting new-trials, which would not be liable to exceptions; perhaps, those least liable to them, are cases, in which, some known rule of law is violated by their verdict, or where the principles of evidence are altogether disregarded by the jury, or at least so far lost sight of as to have little or no influence on their decisions. In all such cases, it would be the duty of the court, in the exercise of its legal discretion, to direct new trials with a view to the attainment of the ends of justice, and to render the decisions of our courts consistent with the principles of law and evidence.
*371 But where a ease turns principally, if not entirely on matters of fact, or on evidence within the pro-vinee of the -jury, and no rule of law is violated, or J J , principle of evidence disregarded, it appears to.me to be the duty of the judges to support, rather than to set afloat, the verdicts of juries. And this doctrine is strongly supported by the case of Howe and Granville, in 7 Mod. 117. where a new tiial was ’ denied after verdict, there being evidence on both sides. Also, in the case of Ashley vs. Ashley 2 Str. 1442. where the Judge who tried the cause, (which was on'a note for ¿05,000, .supposed to be forged,) certified that the weight of evidence was with the plaintiff, and he thought .the jury would find for the plaintiff, but they found for defendant, elper Curiam, as there was evidence on the part of defendant, the jury are the .proper judges which acále preponderates. It cannot he said to be a verdict against evidence, and, therefore,, the cou rt refused to grant a new trial. So in the case of Smith vs. Huggins, et al. ibid. 142. the same rule was laid down and new trial - denied, though there was but weak evidence for the plaintiff) and the chief justice summed up strongly for the defendant.
On a motion for a new trial, in an action by the owner of the inheritance for making a dam across an ancient water-course, the judge who tried the cause, certified that six witnesses were examined at the trial on each side: that the jury found for the defendant, which was against his opinion : but that he could not take upon himself to say it was a ver- *372 diet against evidence, because there was evidence on both sides, so a new trial was refused. 1 Will, 22. 2 Morg. Essays, 52.
Mr. Justice Foster agreed to the propriety of setting aside verdicts where juries find against evidence, and even though there be a contrariety of evidence, where it greatly preponderates against the verdict, But in all cases where the evidence is nearly in equilibrio, he declared he should always think himself bound to have regard to the finding, of the jury, for (t ad qussstionem facti respondent juraiores.” In such a case, it is not the province of the judge to determine, it ought to be left to the jury. Trials per pais, 447. 2 Morg. Essays, 66, Also in the case of Swain vs. Hall, 3 Will. 45. Lord Chief Justice Wilmot lays it down as a settled rule, that where verdicts have been given contrary to evidence, or where there has been no evidence to support them, the court will grant new trials. But if there has been a contrariety of evidence, the courts have never granted new trials, notwithstanding the judge, before whom the cause has been tried, hath been of opinion that the strength and weight of the evidence was against the verdict. In the present case, his lordship adds there was a contrariety of evidence, and although I am still of opinion that the weight of the evidence was with the plaintiff, yet, I disclaim any power to control this verdict of the jury, who are the legal, constitutional judges of the fact. Bo a new trial was refused. 2nd Morg. Essays, 100.
*373 After these strong cases upon this point, it appears to me it would he a waste of time to quote more, though many more might he quoted to the same import. They will go to prove clearly that in all cases where there is a contrariety of .evidence, or where there is evidence on both sides, or where it is in equilibrio, the court never will invade the province of a jury, but leave matters of fact to them, as the constitutional judges of facts.
What was the great leading fact in the case under consideration? Why, the sea-worthiness of the brig John, at the time she sailed. What was the testimony for, and against this important fact? Why, the master and mariners swear she was seaworthy when she sailed, but she sprang a leak, and obliged them to bear away for Wilmington. On the other hand, the surveyors who viewed her state and condition, after her arrival in Cape Fear River, swear she was not sea-worthy. Other witnesses were examined who reside in Charleston, — some of whom swear, that, in their opinion, the brig was not sea-worthy, — others swear, that, in their opinion, she might have performed a voyage in fair weather, and that she had been lately repaired before she sailed. Is it not then very evident, that there was a great contrariety of evidence' in this case ? Surely there was. And is it not equally evident, that there was evidence on both sides ? This is equally clear and evident.
Rut it may be said, the weight of the testimony *374 seemed to be in equilibrio, and what was the result? # X The jury, to whom it was very fairly submitted, have considered and judged of it. They have said the scale preponderated in favour of the plaintiifs, and they have found 81000 in their favour. Shall this court then, under all the circumstances of the case, say the jury did wrong, and set aside their verdict? If they should do so, in my opinion, the judges would become the triers, instead of the jurors. The sea-worthiness was a matter of fact for the jury, and not for the court; and as the jury have decided the case by their verdict, I am against disturbing it, and think it should remain at rest. All the foregoing authorities are, I think, clear upori the subject, and fully justify me in this opinion.
New trial granted.